AMAZIAH MAYO *vs.* WILLIAM MERRICK, administrator.

Hampden. Sept. 23. — Oct. 25, 1879. ENDICOTT & LORD, JJ., absent.

E. mortgaged two parcels of land to I., and then conveyed one of the parcels, subject to this mortgage, to A., who mortgaged the parcel to E. to secure A.'s note for a part of the purchase money, and agreed therein to pay one half of the mortgage to I. E. indorsed the note of A. to M., and handed him the mortgage of A., intending that the title to it should vest in him, but did not then formally assign the mortgage to him. After this, E. mortgaged to H. the other parcel of land, the deed containing full covenants of warranty; and H. took an assignment from I. of the mortgage on both parcels. M. then obtained a formal assignment from E. of the mortgage given by A. All of the conveyances were seasonably recorded. Subsequently, H. sold both parcels, under a power of sale contained in the mortgage to I., for more than enough to pay that mortgage and the expenses of sale. At the time of the sale, the parcel described in the mortgage from E. to H. was worth more than the other parcel. *Held*, on a bill in equity by M. against H. for an account of the surplus proceeds of the sale, that M. stood in the same position as if the mortgage given by A. had been assigned to him when A.'s note was indorsed to him; that from the surplus proceeds of the sale should be deducted the excess in value which one parcel had over the other, and that M. was entitled to recover of H. one half of the remainder.

BILL IN EQUITY for an account. The case was heard by *Soule*, J., and reported for the determination of the full court in substance as follows :

On July 31, 1872, William Elliott, the owner of certain land, mortgaged it to the Massachusetts Mutual Life Insurance Company. On October 1 following, Elliott conveyed to Marietta Allen a part of the land, and she mortgaged the same back to him to secure her note given in part payment of the purchase money. In this mortgage, she covenanted that the land was free from incumbrances, except the mortgage to the insurance company,

one half of which she assumed and agreed to pay. A few days after this mortgage was given to Elliott, he, for a good considera- tion, indorsed to the plaintiff the note secured by it, and handed the mortgage to him, intending that the title to the same should vest in him; but it was not then formally assigned to him. On March 27, 1876, Elliott mortgaged to Dennis Hubbard, the de- fendant's intestate, that part of the land which remained in his hands after the conveyance to Allen, to secure Elliott's note to Hubbard for the sum of $1500, which note is still unpaid. In this mortgage Elliott agreed to pay the mortgage to the insurance company, and warranted to defend the premises against the law- ful claims and demands of all persons. On May 10, 1876, the mortgage given by Elliott to the insurance company, and the debt secured thereby, were assigned to Hubbard; and, on December 4, 1876, the plaintiff caused to be formally assigned to him the mortgage made to Elliott by Allen, which, up to this time, he had supposed stood in his name. Elliott having failed to pay the mortgage note given to the insurance company, Hubbard pro- ceeded to foreclose the mortgage; and, on December 4, 1876, sold the premises in it described, pursuant to a power contained in the mortgage, for the sum of $5475; and, on December 13, exe- cuted a deed under the power, and received the purchase money. After paying the mortgage debt and expenses of sale, there re- mained in his hands, of the proceeds of the sale, the sum of $816.70. At the time of the sale, the land covered by the mort- gage from Elliott to Hubbard was worth $500 more than the land covered by the mortgage held by plaintiff. Shortly after the sale by Hubbard, the plaintiff demanded of him that he account for the surplus in his hands, and pay to him that sum which repre- sented the value of the contribution of his land. This Hubbard refused to do; subsequently Hubbard died, and the defendant was appointed administrator of his estate, and, shortly after his appointment, the plaintiff requested that he account for the balance in his hands and pay to him his share thereof. This the defendant refused to do. All the deeds to which reference is herein made were properly executed, acknowledged, and sea- sonably recorded. The surplus, above the amount due on the mortgage to the insurance company, came into the hands of the defendant on his appointment as administrator, and is held by

him under the claim that he is entitled to hold the whole thereof to apply on the mortgage note of $1500, which was given his intestate by Elliott.

If, on the foregoing facts, the bill could be maintained, a decree was to be entered for the plaintiff for such sum as in the opinion of the court he was entitled to; otherwise, the bill to be dismissed.

*M. P. Knowlton & C. L. Long,* for the plaintiff.

*G. Wells,* for the defendant.

SOULE, J. When Elliott conveyed to Allen, the land conveyed was, with the adjoining land, owned by Elliott, subject to the mortgage to the insurance company. Allen took her deed with the undertaking on her part to pay one half of the mortgage. This undertaking is set forth in her mortgage to Elliott to secure a part of the purchase money. When the plaintiff became the owner of the Allen note by indorsement from Elliott, the payee, and subsequently of the Allen mortgage, by assignment, he held subject to the liability of the land, described therein, to contribute to the extent of one half to the payment of the mortgage to the insurance company. The conveyance to Allen and the mortgage by her to Elliott, afterwards assigned to the plaintiff, having been made before the mortgage to the defendant's intestate, Hubbard, he took, as between himself and Allen and her grantees, subject to the liability of the land described in his mortgage to contribute one half of the expense of satisfying the insurance company's mortgage, notwithstanding the covenants in the deed to him. After the conveyance to and mortgage back from Allen, Elliott was bound, as between himself and her, to pay one half of the mortgage to the insurance company, and his subsequent grantee with covenants of warranty took the estate subject to the same legal and equitable liabilities under which he held it. *Pike* v. *Goodnow,* 12 Allen, 472.

This doctrine is not controverted by the defendant, but he contends that it does not apply to the case, because Elliott owned the Allen mortgage when he made the mortgage to the defendant's intestate. But whatever might have been the result if Elliott had owned the Allen mortgage and note at that time, the fact that he had previously indorsed the note to the plaintiff, for value, renders the defendant's position untenable. After

that indorsement, Elliott held the Allen mortgage in trust for the plaintiff, and no act of his could impair the plaintiff's equitable rights in it. *Eastman* v. *Foster*, 8 Met. 19. *Bryant* v. *Damon*, 6 Gray, 564. *Rice* v. *Dewey*, 13 Gray, 47.

The plaintiff, therefore, stands in the same position as if the Allen mortgage had been assigned to him when the note which it secured was indorsed to him. It follows that, as between the plaintiff and the defendant's intestate, the land covered by the mortgage from Allen, which the plaintiff held by assignment, ought to pay one half of the mortgage to the insurance company, and the land mortgaged to the intestate ought to pay the other half. From the surplus proceeds of the sale, after paying the insurance company's mortgage, should be deducted the sum of $500, and the remainder of the surplus proceeds will have been produced equally by the land mortgaged to the intestate and the land covered by the mortgage held by the plaintiff, and each parcel will have contributed one half toward satisfying the insurance company's mortgage. Of the remainder thus obtained, the plaintiff is entitled to one half. *Decree accordingly.*